CLARK V GERITY MICHIGAN CORPORATION

Docket Nos. 77-53, 77-54. Submitted January 9, 1978, at Detroit.—
Decided June 19, 1978. Leave to appeal applied for.

Plaintiff Thurmon Clark suffered the industrial amputation of
both hands on June 11, 1956, while in the employment of
defendant Gerity Michigan Corporation. Defendants Fidelity &
Casualty Company of New York, Gerity's insurance carrier,
and the Second Injury Fund paid plaintiff total and permanent
disability benefits for a period of 800 weeks from the date of
injury, before terminating all benefits on October 12, 1971.
Plaintiff petitioned the Workmen's Compensation Bureau and
received a hearing regarding the payment of further benefits.
The hearing was held on stipulated proofs that plaintiff had
been working continuously since 1962 as a night watchman and
supervisor of boys in a county juvenile home, at wages greater
than those earned at the time of injury. The hearing referee
held the plaintiff's right to benefits terminated at the conclu-
sion of the 800 weeks, finding that the presumption of perma-
nent and total disability no longer applied and factually that
plaintiff was not presently disabled. Plaintiff appealed to the
Workmen's Compensation Appeal Board which reversed the
referee's ruling and ordered continuing benefits, holding that
the plaintiff's physical state was conclusive regarding his con-
tinued entitlement to total disability benefits and that his
current employment was not of legal significance. Applications
for leave to appeal to the Court of Appeals were granted to
Gerity and Fidelity and to the Second Injury Fund, and the
cases were consolidated. *Held:*

Plaintiff is not presently incapacitated from work at common
labor as a result of his injury. The statute regarding total
incapacity that was in effect at the time of the injury provided
that the conclusive presumption of total and permanent disabil-
ity terminates at the end of 800 weeks and the further entitle-
ment to disability benefits thereafter becomes a question of fact

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Workmen's Compensation § 27.
[2] 81 Am Jur 2d, Workmen's Compensation § 4.
[3] 82 Am Jur 2d, Workmen's Compensation § 340.

subject to adjudication under the provisions of the Worker's Disability Compensation Act. The question of fact of further entitlement to disability benefits after 800 weeks is not circumscribed by the definition of total and permanent disability contained in the section of the act defining total and permanent disability.

Reversed.

1. WORKMEN'S COMPENSATION—COURT OF APPEALS—LEGISLATIVE INTENT—PROMULGATION OF ACTS—INTERPRETATION.

The Court of Appeals is not bound in appeals from the Workmen's Compensation Appeal Board by the appeal board's interpretation of the Legislature's intent in promulgating an act.

2. WORKMEN'S COMPENSATION—RIGHT TO COMPENSATION—EXISTENCE.

An injured employee's right to worker's compensation is controlled by the law in effect at the time the right to compensation springs into existence.

3. WORKMEN'S COMPENSATION—CONCLUSIVE PRESUMPTIONS—TOTAL INCAPACITY—TOTAL AND PERMANENT DISABILITY—TERMINATION OF PRESUMPTION—QUESTION OF FACT—FURTHER ENTITLEMENT—STATUTES.

The conclusive presumption of total and permanent disability within the meaning of the workmen's compensation act regarding total incapacity terminates at the end of 800 weeks from the date of injury; the further entitlement to disability benefits thereafter becomes a question of fact subject to adjudication under the provisions of the Worker's Disability Compensation Act and is not circumscribed by the definition of total and permanent disability contained in the statute defining total and permanent disability (MCL 412.9, 412.10; MSA 17.159, 17.160).

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P. C.* (by *Robert G. Hodges* and *Raymond A. Booms*), and *Joseph J. Conklin,* for plaintiff.

*Conklin, Benham, McLeod, Ducey & Ottaway, P. C.* (by *Thomas P. Chuhran*), for Gerity Michigan Corporation and Fidelity & Casualty Company of New York.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard F. Za-*

*pala,* Assistant Attorney General, for the Second Injury Fund.

Before: ALLEN, P. J., and J. H. GILLIS and M. J. KELLY, JJ.

M. J. KELLY, J. Plaintiff-appellee, Thurmon Clark, was employed by the defendant, Gerity Michigan Corporation on June 11, 1956, when he suffered the industrial amputation of both hands. The plaintiff lost his hands when the punch press to which he was assigned repeated.

The employer's insurance carrier, Fidelity & Casualty Company of New York, and the Second Injury Fund, have paid total and permanent disability benefits from the date of injury until October 12, 1971, a period of 800 weeks. On October 12, 1971, the defendants terminated all benefits.

Plaintiff petitioned for further benefits, a hearing was held on stipulated proofs that plaintiff went to work in 1962 in the field of common labor as a night watchman and supervisor of boys in a county juvenile home. For purposes of this record plaintiff's employment is continuous and his wages greater than those earned at the time of injury. On the stipulated facts the administrative law judge entered a decision that plaintiff's right to benefits terminated at the conclusion of 800 weeks. He found "that the presumption of permanent and total disability no longer applies and factually plaintiff is not presently disabled". The appeal board split 3–2, reversed the administrative law judge and ordered continuing benefits on the basis that plaintiff's physical state was conclusive regarding continuing entitlement to total disability benefits and holding his current employment without legal significance.

The issue is clear-cut but there is no precedent.

We are called upon to interpret the Legislature's intent in promulgating 1955 PA 250; MCL 412.9; MSA 17.159. We are not bound by the Workmen's Compensation Appeal Board's interpretation of the act. *DeGeer v DeGeer Farm Equipment Co,* 391 Mich 96, 100; 214 NW2d 794 (1974).

An injured employee's right to worker's compensation is controlled by the law in effect at the time the right to compensation springs into existence. *Tarnow v Railway Express Agency,* 331 Mich 558; 50 NW2d 318 (1951), *Pleiness v Mueller Brass Co,* 56 Mich App 169; 223 NW2d 634 (1974). The law in effect at the time of Mr. Clark's injury, 1955 PA 250 (formerly MCL 412.9; MSA 17.159, current version at MCL 418.351; MSA 17.237(351)) provided in pertinent part:

"Sec. 9. (a) While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee, a weekly compensation of 66-2/3% of his average weekly wages, but not more than $32.00 if such injured employee has no dependents; $34.00 per week if 1 dependent; $36.00 if 2 dependents; $38.00 if 3 dependents; $40.00 if 4 dependents and $42.00 if 5 or more dependents. Weekly payments shall in no event be less than $18.00 if there are no dependents; $20.00 if 1 dependent; $22.00 if 2 dependents; $24.00 if 3 dependents; $26.00 if 4 dependents; and $28.00 if 5 or more dependents, and in no case shall the period covered by such compensation be greater than 500 weeks from the date of injury, nor shall the total compensation exceed an amount equal to 500 times the total weekly amount payable under this section 9, except for permanent and total disability as defined in section 10, when the compensation shall be paid for the duration of such permanent and total disability: Provided, *That the conclusive presumption of total and permanent disability shall not extend beyond 800 weeks from the date of injury, and thereafter the question of permanent and total disabil-*

*ity shall be determined in accordance with the fact, as the fact may be at that time.* Any person who is permanently and totally disabled and who is receiving payments of workmen's compensation which are payable to such person under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall hereafter receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now receiving per week and the amount per week now provided for permanent and total disability with appropriate application of the provisions of paragraphs (b), (c), (d) and (e) of this section since the date of injury. Payments from this second injury fund shall continue after the period for which any such person is otherwise entitled to compensation under this act for the duration of such permanent and total disability according to the full rate provided in the schedule of benefits." (Emphasis added.)

The act in effect at the time of the injury also provided in § 10 that:

"Total and permanent disability, compensation for which is provided in section 9 hereof, means:

(1) Total and permanent loss of sight of both eyes.

(2) Loss of both legs or both feet at or above the ankle.

(3) Loss of both arms or both hands at or above the wrist.

(4) Loss of any 2 of the members of faculties enumerated in (1), (2) or (3).

(5) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

(6) Incurable insanity or imbecility."

1954 PA 175 (formerly MCL 412.10; MSA 17.160, current version at MCL 418.361; MSA 17.237(361)). In 1956 the Legislature added a seventh category.

"(7) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subsection (7) such permanency to be determined not less than 30 days before the expiration of 500 weeks from the date of injury."

1956 PA 195 (formerly MCL 412.10; MSA 17.160, current version at MCL 418.361; MSA 17.237(361)).

Plaintiff contends that since he still comes within the provisions of subsection 3, he is totally and permanently disabled as defined *by law*. However, defendants point out that § 9 requires that after 800 weeks, "the question of permanent and total disability shall be determined in accordance with the fact, as the fact may be at that time" and that therefore plaintiff must be permanently and totally disabled *in fact* to be entitled to further benefits.

Simply stated, the question comes down to whether the statutory definition of total and permanent disability applies after the 800 week period as plaintiff contends or whether after 800 weeks, the question of total and permanent disability becomes a question of fact using the standards set forth in cases decided before the statutory definition, MCL 412.10; MSA 17.160, was enacted. 1954 PA 175.

Michigan courts have not addressed the issue of what standards are to be used to determine total and permanent disability after the 800 week presumption has elapsed. It is clear that to qualify for the 800 week presumption, a claimant must come within one of the subsections of § 10. *Hier v Boichot Concrete Products Corp,* 379 Mich 605; 153 NW2d 753 (1967), *Verberg v Simplicity Pattern Co,* 357 Mich 636; 99 NW2d 508 (1959). The cases on which both plaintiff and defendants rely do not

help resolve this question because they are distinguishable.

We see the statute as equivocal. We determine the issue on our surmise of legislative intent. We reverse.

Plaintiff is employed at common labor and has been since 1962.

Plaintiff is not incapacitated from work as a result of his injury.

The conclusive presumption of total and permanent disability within the meaning of the act terminates at the end of 800 weeks. The further entitlement to disability benefits thereafter becomes a question of fact. We believe the Legislature intended the question of fact of further entitlement to be subject to adjudication under the provisions of the Worker's Disability Compensation Act whether the worker happened to be a bilateral amputee or was subject to a general disability. The opposite view was so eloquently expressed by appeal board member Molly Ann C. Beitner that we print a portion of her opinion as an appendix to this decision. For what it is worth we express our sympathy with that view but we decide these controversies on our oaths as jurists, not on our sympathies with results.

We hold that the appeal board erred in determining the question of fact of further entitlement after 800 weeks as being circumscribed by the definition of total and permanent disability listed in the subsections of § 10, *supra.*

Plaintiff's physical state is not the whole issue. Plaintiff's capacity for work at common labor is conceded in the stipulated facts. Plaintiff's incapacity for work at common labor terminated when he went to work in 1962. His entitlement to benefits expired at the end of 800 weeks in 1971. We are

not presented with a claim for differential benefits. Questions of individual heroism, dedication, self-enlightenment and incentive for rehabilitation are beside the fact. Plaintiff is not presently incapacitated from work at common labor on the stipulated facts.

Reversed. No costs.

## APPENDIX

### (Excerpt from the majority opinion of appeal board member Molly Ann C. Beitner)

"To hold, as does the Chairman, that wages at the time of hearing equal to or greater than wages at the time of injury is dispositive of the issue before us is to condone gross inequity and to invite utter chaos, hardly reflective of stability in administering these cases as they arise. Suppose, for example, that plaintiff had lost, at some point up to the day before the hearing, his job as head counter. Would then defendant have continued payments voluntarily and withdrawn its application for hearing if one had been filed in such a situation? Suppose the job were lost the day after the hearing. Would then the Chairman order that benefits resume? I suspect that the argument in the first example and the holding in the second would be that plaintiff is deprived of further benefits because he has established a subsequent wage earning capacity by virtue of the fact of having done, at some point since his injury, regular work for regular wages. This is however not enough to establish wage earning capacity. *Evans v U S Rubber Co,* 379 Mich 457, 152 NW2d 641 (1967). If the fact of having done or of doing regular work for regular wages is to be the reason for denying further benefits to the bilateral amputee the wary

bilateral amputees of the future will surely choose any dole for which they might qualify over honest wages to supplement their benefits especially if such honest wages begin to approach those earned at the time of injury many years before. If the fact of having done or of doing regular work for regular wages is determinative of the issue before us, what marketable expertise has the bilateral amputee acquired in such regular work to place him in the position that the Second Injury Fund was, by the 1955 and 1956 amendments, designed to place him when that job is lost and he, with bilateral amputations, goes looking for work? It is my position that the Act contemplates no consideration of such factors and that total and permanent disability at the expiration of 800 weeks is a question solely of physical fact. PA 1955 No 250 speaks of permanent and total disability thereafter not of general disability thereafter. That this interpretation well means lifetime benefits for the bilateral amputee is no more than a foreshadowing of later provisions to award lifetime benefits to the merely generally disabled. It is reasonable that the Legislature began with the most grievously injured workers. Any corporate villainy which existed in the past has long been replaced by corporate conscience and machines which repeat have been replaced by those which cannot dismember. The horror experienced by plaintiff was an isolated one even 20 years ago. I have faith that such tragedies will occur with infinitely increasing infrequency. When they do occur, it is the public policy of an enlightened people to direct, to the full extent provided in law, that the resources of modern industry compensate the victims. The mandate is reflected not just in the spirit of our Act but in its very wording.

"In my conviction that only one fact, the physical fact, may be considered at the expiration of 800 weeks, I am not unmindful of the possibility that there will appear someday before the Bureau that plaintiff who, at common labor, lost hand and foot, for example, but who, so handicapped, overcame to attain eminence in some profession or proficiency in some trade, the individual who, through genius, perseverance, or the blessing of genuine rehabilitative measures, has done for himself that which the 1955 and 1956 provisions were added to do for him. Perhaps by use of the words "establish a subsequent wage earning capacity" the Courts over the years have contemplated a continuing but noncompensable general disability in the field of common labor where the injury occurred because the injured employee acquired a skill and, through the plying of such trade for a significant period of time, carried with him a marketable expertise when he lost any particular job within the field of that skill. Little short of such a situation and perhaps not even such a situation (the plaintiff in *Liesinger [v Owen-Ames-Kimball Co,* 377 Mich 158; 139 NW2d 706 (1966)] acquired and worked at the new skill of welder yet Mr. Justice Souris nonetheless, as noted earlier, anticipated the possibility of continued benefits beyond 800 weeks) would permit a holding under our law of disability—inability to compete with the able bodied because of a work-related injury in the whole field of employment, skilled or common labor, in which the injury occurred, inability to do all those tasks within that field after the injury because of the injury that the employee was able to do, although perhaps never called upon to do, before the injury—that an injured employee has established a subsequent wage earning capacity in the face of residuals of that work-related injury.

"The statutory provisions for total and permanent disability do not permit consideration of factors which may be considered in evaluating continuing general disability. Because I believe that the Legislature intended the designation total and permanent disability to be one in which few injured employees be *included,* I believe as well that it intended that designation to be one from which employees who, because of irredeemable losses comprised within a minority of the categories, never be *excluded.*" (Emphasis in original.)