DECHERT v GENERAL MOTORS CORPORATION

Docket No. 78-571. Submitted May 14, 1979, at Detroit.—Decided August 21, 1979.

Plaintiff, Ima Dechert, worked for defendant General Motors Corporation until she suffered an injury. She quit her employment and received disability benefits for 500 weeks. Later she applied for and received a disability pension. Then she filed a claim against GM and the Second Injury Fund for total and permanent disability, alleging loss of industrial use of both legs. The Bureau of Workmen's Compensation Administrative Law Judge, Claudia Morcom, found for plaintiff and awarded compensation. The Workmen's Compensation Appeal Board reversed. Plaintiff appeals by leave granted. The issue on appeal is: Is the ability to return to favored work a sufficient basis on which to deny worker's disability benefits for total and permanent loss of industrial use of both legs? *Held:*

The economic impact of an injured claimant's ability to perform favored work is irrelevant to the decision of cases claiming loss of industrial use of both legs, but the physical abilities of an injured claimant are germane to the factual question and should not be ignored merely because the capacity for use of the legs is expressed in terms of a claimant's ability to perform a particular type of work.

Remanded with instructions.

1. WORKMEN'S COMPENSATION — INDUSTRIAL USE OF LEGS.

A leg-connected disabling pain which is so severe as to make use of the legs in industry practically impossible constitutes total and permanent loss of industrial use of both legs.

2. WORKMEN'S COMPENSATION — INDUSTRIAL USE OF BOTH LEGS — ABILITY TO PERFORM FAVORED WORK.

The economic impact of an injured claimant's ability to perform favored work is irrelevant to the decision of cases claiming loss

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workman's Compensation § 340.
[2] 82 Am Jur 2d, Workman's Compensation § 338 *et seq.*

of industrial use of both legs, but the physical abilities of an injured claimant are germane to the factual question and should not be ignored merely because the capacity for use of the legs is expressed in terms of a claimant's ability to perform a particular type of work.

*Dietrich & Cassavaugh, P.C.,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph M. Binno,* Assistant Attorney General, for defendant Second Injury Fund.

Before: N. J. KAUFMAN, P.J., and ALLEN and K. B. GLASER, JR.,* JJ.

PER CURIAM. Plaintiff, Ima Dechert, started work for defendant General Motors in 1950 or 1951. In 1955 or 1956, she began experiencing back and leg pains, which led to back surgery. She worked intermittently until January, 1962, when she left General Motors due to her health difficulties. General Motors voluntarily paid disability benefits to the plaintiff for 500 weeks, the benefits terminating in March, 1970. Later that year she applied for and began receiving a disability pension; she was 51 years old at that time, and explained that she had not applied for the pension at an earlier date because she had had hope of being able to return to work.

In 1973, the plaintiff filed this claim for total disability benefits, claiming a permanent and total loss of industrial use of both legs.

At a hearing before the Bureau of Workmen's Compensation administrative law judge, the plaintiff testified that she continues to experience back and leg pain but can do light housework, garden-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ing and grass cutting and that she can shop, drive an automobile and play golf.

The plaintiff's former family physician testified that he treated the plaintiff until 1966, at which time, in his opinion, her back surgery and persistent pain had rendered her permanently unable to work. Other physicians gave conflicting testimony as to plaintiff's limitations.

Relying on the testimony of the family physician, the administrative law judge found that the plaintiff had experienced total permanent disability commencing on January 5, 1962, and ordered the defendants to pay compensation from that date, not to exceed 800 weeks from the injury date.

On appeal, the Workmen's Compensation Appeal Board (WCAB) reversed the decision of the administrative law judge finding in part:

"* * * plaintiff has failed to sustain her burden of proving permanent and total loss of industrial use of both legs. * * *

Beyond a doubt, she cannot return to common labor jobs requiring frequent bending, lifting, turning and stooping and has therefore demonstrated work-related disability in the field of common labor. However, these restrictions do not mean she is permanently and totally disabled. The testimony merely demonstrates that she can return to *favored* work which takes her restrictions into consideration." (Emphasis in original.)

The plaintiff's application for leave to appeal the decision of the WCAB to this Court was met with an order to submit a supplemental brief on the issue:

"Is the ability to return to *favored work* a sufficient basis on which to deny worker's disability benefits for permanent and total loss of industrial use of both legs?" (Emphasis in original.)

Upon submission of that brief, leave to appeal was granted. Only defendant Second Injury Fund has filed a responsive brief.

The plaintiff's claim was decided by the WCAB under the provisions of MCL 412.10(b)(7); MSA 17.160(b)(7), now MCL 418.361(2)(g); MSA 17.237(361)(2)(g), which reads, in pertinent part:

"(2) Total and permanent disability, compensation for which is provided in section 351 means:

\* \* \*

"(g) Permanent and total loss of industrial use of both legs \* \* \*."

In *Miller v Sullivan Milk Products, Inc,* the Court held:

"In *Hutsko v. Chrysler Corporation* (1968), 381 Mich 99, this Court said (p 102):

" 'Michigan has 2 types of workmen's compensation benefits, wage loss disability payments and specific or schedule loss payments. The first type is dependent upon proof of a wage loss resulting from an industrial injury. It is a differential payment computed on what wage the injured workman is able to earn after his injury and the wage he was earning at the time he was injured. If there is no difference he receives no benefits. The second type is a specific loss benefit paid under a schedule of losses applicable to certain designated organs or anatomical members. To this benefit the injured workman is entitled during the period provided in the schedule, *irrespective of any wages he receives whether greater or less than those he received at the time of his injury.'* (Emphasis added.)

"A review of specific loss cases reveals that loss of 'industrial use' is a question of fact. The test of that fact has been to equate such a loss with the physical or anatomical loss of use of a member of the body rather than with an economic reality test. (Citations omitted.) If 'loss of use' is established, recovery follows even

though there are no economic consequences from the loss. See *Hutsko v. Chrysler Corporation, supra,* pp 102-104." *Miller v Sullivan Milk Products, Inc,* 385 Mich 659, 665-666; 189 NW2d 304 (1971).

The WCAB's mention of "favored work" raises some question as to whether the correct legal standard has been applied in denying the plaintiff's claim. In wage-loss disability cases, in which an injured employee's reduced earning capacity is an issue, the ability of the employee to perform favored work tailored to his new disability may not be considered as a factor increasing his post-injury earning capacity and therefore reducing his benefits. *Evans v United States Rubber Co,* 379 Mich 457; 152 NW2d 641 (1967). If favored work may not be considered in measuring a disability in which economic loss is nevertheless a proper consideration, it is surely improper to consider the economic impact of favored-work capacity in determining a claim which, like a specific-loss claim, is completely unconnected with actual economic injury.

Whether a claimant has totally and permanently lost the industrial use of his legs is a question of fact for the WCAB. *Miller, supra.* If there is "any evidence whatever" to support the WCAB's finding, the ruling will not be disturbed by this Court. However, the courts have the duty to ensure that the WCAB applies the correct legal standards to the evidence before it. *Thornton v Luria-Dumes Co-Venture,* 347 Mich 160; 79 NW2D 457 (1956).

In *Paulson v Muskegon Heights Tile Co,* 371 Mich 312; 123 NW2d 715 (1963), disabling pain resulting from the use of the claimant's legs was asserted to entitle the claimant to benefits for total and permanent disability. The Court offered a definition:

"We construe the statute to mean that permanent and total loss of industrial use, insofar as the facts in this case are concerned, is that leg-connected disabling pain associated primarily with the use of the legs, which is so severe as to make use of the legs in industry practically impossible." 371 Mich 312, 319.

*Paulson, supra,* set forth what we believe to be the governing definition of "loss of industrial use". The economic impact of an injured claimant's ability to perform favored work is irrelevant to the decision of cases claiming benefits for such a loss. However, the physical abilities of an injured claimant are germane to the factual question faced by the WCAB in such cases, and should not be ignored merely because the capacity for use of the legs is expressed in terms of a claimant's ability to perform a particular type of work.

The opinion of the WCAB does not clearly reflect the use it made of the evidence of the plaintiff's ability to return to her cushion sorting job. The unfortunate choice of the term "favored work", which is associated with an improper analysis of claimants' post-injury economic situations, raises a significant question whether the correct legal standards were applied to the plaintiff's claim. Therefore the board should reconsider this case in light of this opinion and clarify its findings as to what, if any, use plaintiff could make of her legs in industry in "favored work" or otherwise.

The remaining contentions of the plaintiff are without merit.

The decision of the WCAB is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

We retain jurisdiction.