KIDD v GENERAL MOTORS CORPORATION

Docket No. 64649. Argued May 5, 1981 (Calendar No. 6).—Decided
    December 7, 1982.

Donald Kidd was found to be totally and permanently disabled as
    a result of the loss of the industrial use of both hands in a
    work-related accident while employed by the General Motors
    Corporation, AC Spark Plug Division, and was awarded work-
    ers' compensation benefits. The benefits were discontinued after
    the expiration of 800 weeks. Mr. Kidd petitioned the Bureau of
    Workers' Disability Compensation, alleging his entitlement to
    continuing benefits. A hearing referee awarded further benefits
    with no wage setoff, although, at the time, Mr. Kidd was
    employed by General Motors and was receiving a wage greater
    than he had received at the time of the accident. General
    Motors and the Second Injury Fund appealed to the Workers'
    Compensation Appeal Board, arguing that because of this em-
    ployment since shortly after the accident and the amount of
    the wages the plaintiff could no longer be considered to be
    totally and permanently disabled. The WCAB reversed the
    award of benefits beyond the initial 800 weeks. The Court of
    Appeals, R. M. Maher, P.J., and J. H. Gillis and D. C. Riley, JJ.,
    denied leave to appeal (Docket No. 46517). The plaintiff ap-
    peals.

    In a unanimous opinion per curiam, the Supreme Court held:

    The proper standard to be applied in determining whether a
    worker remains totally and permanently disabled after the 800-
    week period of conclusive presumption is whether the worker's
    physical condition at that time is within the statutory defini-
    tion of total and permanent disability. If it is, the worker is
    entitled to further benefits. However, the benefits are subject to
    the general wage setoff provision of the act.

    1. The loss of the industrial use of parts of the body is a

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation §§ 338-340.
[2] 82 Am Jur 2d, Workmen's Compensation §§ 517, 540 et seq.
[3] 82 Am Jur 2d, Workmen's Compensation §§ 368, 369.

question of fact. A claimant must be determined to fit physically within one of the delineated categories in the act to be totally and permanently disabled for the purpose of awarding compensation. Once the loss of use is established, the act provides an 800-week period of conclusive presumption of total and permanent disability. After the 800-week period, the conclusive presumption no longer applies, and a claimant's total and permanent disability must be established in accordance with his physical condition at that time. The standard for determining post-800-week total and permanent disability is the same as the standard for determining pre-800-week disability. The Legislature did not intend that a different standard be used after the expiration of the 800-week period. Actual earnings of a claimant at the time of the determination are not relevant in assessing his total and permanent disability.

2. An amendment to the workers' compensation act extended employers' liability to all basic compensation benefits in effect at the time of a worker's injury for the duration of the worker's total and permanent disability. The employer's liability does not end after a specified number of weeks and pass to the Second Injury Fund. Rather, the Second Injury Fund is liable only for increases in benefits in accordance with subsequent amendments to the act. The act provides that the compensation payable to a worker when added to his wage-earning capacity after an injury in the same or other employment shall not exceed his average weekly wage at the time of the injury. Injuries which occur subsequent to the effective date of the amendment are subject to the setoff provision, including post-800-week total and permanent disability compensation. Thus, the general wage setoff provision of the act applies to the payment of total and permanent disability compensation in this case.

Reversed and remanded.

84 Mich App 151; 269 NW2d 510 (1978) overruled.

1. WORKERS' COMPENSATION — TOTAL AND PERMANENT DISABILITY — DETERMINATION OF DISABILITY.

The standard to be applied under the workers' compensation act to determine a worker's total and permanent disability is whether the worker's physical condition fits within the act's definition of total and permanent disability; the worker's actual earnings at the time of the determination are not relevant in assessing his disability (MCL 412.10; MSA 17.160, since repealed by 1969 PA 317).

2. WORKERS' COMPENSATION — TOTAL AND PERMANENT DISABILITY —
   CONCLUSIVE PRESUMPTION OF DISABILITY — CONTINUING DIS-
   ABILITY.

   A worker who is determined to be totally and permanently
   disabled under the workers' compensation act is conclusively
   presumed to remain disabled for 800 weeks after the date of his
   injury but after the expiration of the 800-week period, the
   worker's total and permanent disability must be established in
   accordance with his physical condition at that time; the stan-
   dard for determining post-800-week total and permanent dis-
   ability is the same as that for determining the original total
   and permanent disability (MCL 412.9[a]; MSA 17.159[a], since
   repealed by 1969 PA 317).

3. WORKERS' COMPENSATION — TOTAL AND PERMANENT DISABILITY —
   WAGE SETOFF — CONTINUING DISABILITY.

   The compensation payable to a totally and permanently disabled
   worker subsequent to the initial 800-week period of conclusive
   presumption of disability is subject to the wage setoff provision
   of the workers' compensation act which requires that the
   compensation paid to a worker when added to his wage-earning
   capacity in the same or other employment shall not exceed his
   average weekly earnings at the time of the injury (MCL 412.11;
   MSA 17.161, since repealed by 1969 PA 317).

*MacDonald, Fitzgerald & MacDonald* (by *Robert
J. MacDonald)* for plaintiff.

*Munroe & Nobach, P.C.* (by *Richard R. Weiser)*
and *Otis Smith* (of counsel), for defendant General
Motors Corporation.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, and *Eileen D. Zielesch*
and *Richard F. Zapala,* Assistants Attorney Gen-
eral for defendant Second Injury Fund.

PER CURIAM. This opinion was written by Jus-
tice BLAIR MOODY, JR., prior to his death on No-
vember 26, 1982. We concur in this opinion and
adopt it as our own.

This workers' compensation case focuses on an

employee's entitlement to total and permanent disability benefits after an initial receipt of benefits for 800 weeks from the date of injury. The questions presented are: (1) what is the proper standard to employ under MCL 412.9(a); MSA 17.159(a)[1] in determining whether a worker who has received total and permanent disability benefits for the statutory conclusive presumption period of 800 weeks continues to be totally and permanently disabled and entitled to additional workers' compensation benefits; and (2) whether MCL 412.11; MSA 17.161, which subjects benefits to a setoff by wages earned, is applicable to the post-800-week period.

I

The plaintiff, Donald Kidd, was born in 1933. In July, 1953, he began working as a trim press operator for AC Spark Plug Division of General Motors Corporation. On April 25, 1960, Mr. Kidd was involved in a work-related accident which resulted in the amputation of the fingers of both hands. Mr. Kidd returned to work for defendant in late 1960, but was given a permanent restriction against the use of presses.

On December 21, 1973, following a full hearing in which both General Motors Corporation and the Second Injury Fund participated, Mr. Kidd was found to be totally and permanently disabled as a result of the loss of the industrial use of both hands. Plaintiff received total and permanent disability benefits under the provisions of MCL 412.9(a); MSA 17.159(a) and MCL 412.10; MSA

[1] The 1912 act, MCL 411.1 *et seq.;* MSA 17.141 *et seq.,* in effect in 1960, was repealed and replaced by the 1969 act, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

17.160[2] from GMC and the fund. These benefits were terminated on August 24, 1975, the expiration of the statutory 800 weeks from the date of injury.

Plaintiff then petitioned for a hearing against GMC and the fund alleging his entitlement to benefits after 800 weeks. A second hearing was held. Plaintiff testified at this hearing that he returned to work for GMC as a raw material inspector in late 1960. Plaintiff's employment since that time has been continuous and at wages in excess of those earned at the time of injury. There was no dispute over the fact that Mr. Kidd could no longer perform his pre-injury job as trim press operator.

On June 28, 1976, the hearing referee found that plaintiff's physical condition had worsened since the accident and that plaintiff was totally and permanently disabled in fact and in law. GMC and the fund were ordered to continue the payment of benefits with no wage offset.

GMC and the fund appealed to the Workers' Compensation Appeal Board which found that plaintiff's physical condition had not improved but that he had been regularly employed by GMC since late 1960 at wages in excess of those he was earning when injured. Citing *Clark v Gerity Michigan Corp,* 84 Mich App 151; 269 NW2d 510 (1978), *lv den* 403 Mich 856 (1978), the WCAB reversed the award of benefits beyond 800 weeks.

Application for leave to appeal to the Michigan

---

[2] An injured employee's right to workers' compensation is controlled by the law in effect at the time the right to compensation springs into existence. *Tarnow v Railway Express Agency,* 331 Mich 558, 563; 50 NW2d 318 (1951).

Court of Appeals was denied in an order citing *Clark*. Docket No. 46517 (February 1, 1980). This Court granted leave to appeal. 409 Mich 946 (1980).

## II

It is well-established that to qualify for the statutory 800-week conclusive presumption[3] a claimant must come within the statutory defini-

---

3 MCL 412.9(a); MSA 17.159(a):

"While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee, a weekly compensation of 66-2/3% of his average weekly wages, but not more than $33.00 if such injured employee has no dependents; $36.00 per week if 1 dependent; $40.00 if 2 dependents; $45.00 if 3 dependents; $51.00 if 4 dependents and $57.00 if 5 or more dependents. Weekly payments shall in no event be less than $18.00 if there are no dependents; $20.00 if 1 dependent; $22.00 if 2 dependents; $24.00 if 3 dependents; $26.00 if 4 dependents; and $28.00 if 5 or more dependents, and in no case shall the period covered by such compensation be greater than 500 weeks from the date of injury, nor shall the total compensation exceed an amount equal to 500 times the total weekly amount payable under this section 9, except for permanent and total disability as defined in sections 8a and 10, when the compensation shall be paid for the duration of such permanent and total disability: Provided, That the conclusive presumption of total and permanent disability shall not extend beyond 800 weeks from the date of injury, and thereafter the question of permanent and total disability shall be determined in accordance with the fact, as the fact may be at that time. Any permanently and totally disabled person as defined in sections 8a and 10 who, on or after June 25, 1955, is entitled to receive payments of workmen's compensation under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall after the effective date of this amendatory act receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now receiving per week and the amount per week now provided for permanent and total disability with appropriate application of the provisions of paragraphs (b), (c), (d) and (e) of this section since the date of injury. Payments from this second injury fund shall continue after the period for which any such person is otherwise entitled to compensation under this act for the duration of such permanent and total disability according to the full rate provided in the schedule of benefits."

tion of total and permanent disability.[4] *Hier v Boichot Concrete Products Corp,* 379 Mich 605; 153 NW2d 753 (1967); *Verberg v Simplicity Pattern Co,* 357 Mich 636; 99 NW2d 508 (1959). As a result of his 1960 injury, plaintiff qualified for the 800 weeks of total and permanent disability benefits due to the loss of the industrial use of both hands.

Plaintiff contends that after the 800-week period, although the conclusive presumption of total and permanent disability ends, the standard to determine whether the worker is still permanently and totally disabled is the same one used to make the pre-800-week determination, *i.e.,* does the claimant come within the statutory definition of total and permanent disability?

Defendants, on the other hand, contend that the post-800-week standard is different in that not only the worker's physical state but also the worker's actual earnings are to be considered in determining whether the worker remains permanently and totally disabled. The defendants thus suggest that a second requirement must be considered: whether the employee has re-established a capacity to earn wages in gainful and continuous employment. If

---

[4] The pertinent portion of MCL 412.10; MSA 17.160 states:

"Total and permanent disability, compensation for which is provided in section 9 hereof, means:

"(1) Total and permanent loss of sight of both eyes.

"(2) Loss of both legs or both feet at or above the ankle.

"(3) Loss of both arms or both hands at or above the wrist.

"(4) Loss of any 2 of the members or faculties enumerated in (1), (2) or (3).

"(5) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

"(6) Incurable insanity or imbecility.

"(7) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subsection (7) such permanency to be determined not less than 30 days before the expiration of 500 weeks from the date of injury."

so, benefits do not extend beyond the 800-week period.

From these two competing points of view emerge two distinct issues involving the post-800-week determination. First, what standard is to be applied to find whether a worker still suffers from a permanent and total disability and is therefore entitled to a continuation of compensation benefits. Second, assuming entitlement to benefits, whether such compensation payments are subject to a setoff by wages earned after the 800-week period.

### A

The subject of the first issue is the following portion of MCL 412.9(a); MSA 17.159(a):

"[T]he conclusive presumption of total and permanent disability shall not extend beyond 800 weeks from the date of injury, and thereafter the question of permanent and total disability shall be determined in accordance with the fact, as the fact may be at that time."

The Legislature has specifically defined "permanent and total disability" in MCL 412.10; MSA 17.160.[5] Any claimant whose physical condition places him or her within one of the delineated categories is totally and permanently disabled. In this case, there is no dispute with respect to the initial finding that Mr. Kidd had lost the industrial use of both hands, thus coming within subsection (7).

The determination of whether a worker has lost the ability to use his or her injured limbs in industry is made by examining the physical condi-

---

[5] See fn 4.

tion of the injured limbs, *i.e.,* have the limbs been injured to such a degree that their industrial use is lost. *Pipe v Leese Tool & Die Co,* 410 Mich 510; 302 NW2d 526 (1981). Unlike general disability cases, the earning of post-injury wages is not relevant in specific loss cases under MCL 412.10; MSA 17.160. As we stated in *Miller v Sullivan Milk Products, Inc,* 385 Mich 659, 666; 189 NW2d 304 (1971):

"A review of specific loss cases reveals that loss of 'industrial use' is a question of fact. The test of that fact has been to equate such a loss with the physical or anatomical loss of use of a member of the body rather than with an economic reality test. * * * If 'loss of use' is established, recovery follows even though there are no economic consequences from the loss." (Citations omitted.)

See also *Paulson v Muskegon Heights Tile Co,* 371 Mich 312; 123 NW2d 715 (1963), and *Dechert v General Motors Corp,* 92 Mich App 124; 284 NW2d 751 (1979).

In contrast with this setting, defendants contend that in the post-800-week situation the claimant's physical state *and* his actual earnings and capacity to earn wages should be considered to determine whether he remains permanently and totally disabled. It is asserted that economic consequences should be one of the factors evaluated at this point to ascertain whether total and permanent disability is still the fact. Defendants claim support for their position in the following language of MCL 412.9(a); MSA 17.159(a):

"[T]he conclusive presumption of total and permanent disability shall not extend beyond 800 weeks from the date of injury, and *thereafter the question of perma-*

*nent and total disability shall be determined in accordance with the fact, as the fact may be at that time."* (Emphasis added.)

We are not persuaded by defendants' contention that the Legislature intended the post-800-week standard for permanent and total disability to be in any way different than the initial 800-week standard.

There is no indication in this or any other section of the Worker's Disability Compensation Act that any definition of "total and permanent disability" resulting from a single injury, other than the one given in MCL 412.10; MSA 17.160,[6] is to be used. The act does not refer to facts such as the plaintiff's financial status or wage-earning capacity. In defining total and permanent disability, it enumerates only health impairments. This meaning is emphasized within MCL 412.9(a); MSA 17.159(a) itself. Several lines both before and after the quoted portion refer to permanent and total disability "as *defined in sections 8a and 10*". (Emphasis added.)[7] Therefore, there is no statutory basis on which to conclude that the Legislature intended a different standard for or definition of "permanent and total disability" to prevail after 800 weeks. See *Verberg v Simplicity Pattern Co, supra,* 357 Mich 642.

The significance of the 800-week period is that once a claimant has proved that he or she is permanently and totally disabled as defined by the act, it is conclusively presumed that this disability continues for 800 weeks. Rebutting evidence may

[6] See fn 4.

[7] See fn 4 for the entire text of § 10. Section 8a refers to total and permanent disability resulting from a second injury which is not here applicable.

not be offered because the conclusive presumption is actually a substantive rule of law.[8]

After the 800-week period, the conclusive presumption no longer applies and "thereafter the question of permanent and total disability shall be determined in accordance with the fact, as the fact may be at that time". MCL 412.9(a); MSA 17.159(a). The presumption operates to supply the real facts;[9] thus, when it is no longer in effect, the *then* physical condition of the worker must come within the statutory definition.

It is axiomatic that when the language of an act clearly enunciates a standard and a definition which coincidentally also comport with the spirit and purpose of the act, it is repugnant to attempt to judicially read into the act other requirements or conditions that operate to defeat or limit its aim. The language of the Worker's Disability Compensation Act gives no indication that the Legislature intended that a different standard is to be used post 800 weeks. Rather, the logical interpretation is that the Legislature meant what it said to the effect that post 800 weeks the claimant may no longer rely on the presumption but must prove in fact that he or she still suffers from a permanent and total disability as defined in the act. Accordingly, the standard to be used is the same pre- and post-800 weeks: whether the physical condition of the claimant comes within the statutory definition of total and permanent disability. When loss of industrial use is the applicable category, the general standard relates to the physical impairment of the injured limbs. Actual earnings of the claimant are not considered. See *Pipe v Leese Tool &*

---

[8] See McCormick, Evidence (2d ed), § 342, p 804; *Pleiness v Mueller Brass Co,* 56 Mich App 169; 223 NW2d 634 (1974).

[9] *In re Herbert's Estate,* 311 Mich 608, 613; 19 NW2d 115 (1945); *Blodgett v Snobble,* 295 Mich 374, 377-378; 295 NW 192 (1940).

*Die Co, supra; Martin v Ford Motor Co,* 401 Mich 607; 258 NW2d 465 (1977); *Mitchell v Metal Assemblies, Inc,* 379 Mich 368; 151 NW2d 818 (1967); *Pleiness v Mueller Brass Co,* 56 Mich App 169; 223 NW2d 634 (1974).

To be sure, in the case of specific loss less than total disability, the law of general disability applies at the end of the specified period. If a claimant is still unable to perform the work done when injured at the time benefits paid for the specific loss have expired, the claimant would be entitled to collect further compensation under the general disability sections of the act. *Hlady v Wolverine Bolt Co,* 393 Mich 368; 224 NW2d 856 (1975); *Van Dorpel v Haven-Busch Co,* 350 Mich 135; 85 NW2d 97 (1957). See also *Powell v Casco Nelmor Corp,* 406 Mich 332; 279 NW2d 769 (1979). In the case of assessing permanent and total disability, however, § 9(a) itself specifies the standard to be used at the end of the 800-week period: "permanent and total disability shall be determined in accordance with the fact, as the fact may be at that time." Pursuant to the statutorily mandated definition of what total and permanent disability means, this fact is the actual fact of the claimant's physical condition which is no longer conclusively presumed.[10]

Defendants argue that the Legislature could not have intended that physical condition alone should be determinative because once an injured worker comes within the statutory definition of total and permanent disability, his or her physical condition is not likely to change. Thus, the post-800-week

[10] This is analogous to the established principle that once a matter is adjudicated and an award is made, subsequent modifications may be made upon a showing that the employee's physical condition has changed. *Hlady v Wolverine Bolt Co,* 393 Mich 368, 376; 224 NW2d 856 (1975). See also *Gose v Monroe Auto Equipment Co,* 409 Mich 147, 161; 294 NW2d 165 (1980).

hearing to determine the worker's then physical condition would be a wasted effort.

It is true that most workers who initially come within the statutory definition will never experience an improvement in their physical conditions. This is an obvious conclusion when one examines the catastrophic physical conditions delineated in § 10. However, it does not follow that invariably there can be no improvements. While it is clear that amputated limbs will not regenerate, improvement of physical condition in every other category of § 10 is certainly possible. See, *e.g., Pleiness, supra,* 171.

Defendants also argue that if there is a subsequent change in physical condition, then the initial injury could not have been total and permanent. Certainly at the time of injury a claimant's physical condition must *then* appear to be total and permanent for him or her to come within the statutory definition. However, aside from the potential of regeneration in some categories, we credit the Legislature with knowledge of the quantum medical advances continually being made. A physical condition which renders a worker totally and permanently disabled today may not be the same 800 weeks hence. We find these assertions by the defendants insufficient to cause an interpretive alteration of what the Legislature specifically defined to be total and permanent disability.

At plaintiff's initial hearing in 1973, it was determined that he had lost the industrial use of both hands. When the 800-week conclusive-presumption period ended, plaintiff's physical condition had not changed. The WCAB found as a matter of fact that the physical condition of plaintiff's hands had not improved but that plaintiff had been "regularly employed doing work that appears

to contribute to defendant's productivity". The WCAB denied benefits stating that it was bound by law to comply with *Clark v Gerity Michigan Corp,* 84 Mich App 151; 269 NW2d 510 (1978), *lv den* 403 Mich 856 (1978).

The facts of *Clark* are closely analogous to those of the instant case. Mr. Clark, while working as a punch press operator, suffered the industrial amputation of both hands. He received total and permanent disability benefits for 800 weeks. In 1962, six years subsequent to his injury, Mr. Clark went to work as a night watchman and supervisor of boys in a county juvenile home. This employment was continuous and at wages greater than those he had been earning at the time of injury. The Court of Appeals denied post-800-week benefits because Mr. Clark's "incapacity for work at common labor terminated when he went to work in 1962". 84 Mich App 157.

There are basically two errors in the Court of Appeals analysis. First, the Court found that the Legislature intended further entitlement to disability benefits for the statutorily defined totally and permanently disabled to be determined by using the same standard as in general disability cases. Although such an interpretation of legislative intent is contrary to both the legislative and case history of the act,[11] the Court of Appeals opinion offers no explanation for its interpretation.

Secondly, the Court of Appeals opinion incorrectly interpreted and applied the general disability standard to the *Clark* facts. The *Clark* Court's finding that Mr. Clark was not incapacitated because he could do *some* work cannot be reconciled with the law of general disability.

It is well-established that the standard to be

[11] See discussion above, pp 585-587.

used in general disability cases is whether there is an impairment in wage-earning capacity. This is determined by comparing post-injury with pre-injury ability to compete with the able-bodied for jobs within the type of work in which the injury occurred. See *Powell, supra; Kaarto v Calumet & Hecla, Inc,* 367 Mich 128; 116 NW2d 225 (1962); *Levanen v Seneca Copper Corp,* 227 Mich 592; 199 NW 652 (1924). The earning of wages alone is not determinative of a wage-earning capacity. *Evans v United States Rubber Co,* 379 Mich 457; 152 NW2d 641 (1967). Thus, it was error for the Court of Appeals to find that Mr. Clark's job as a common laborer was enough to establish his post-injury wage-earning capacity.[12] The *Clark* standard which would circumscribe the statutory definitions and instead employ the general disability standard is erroneous. For the above reasons, *Clark v Gerity Michigan Corp* is overruled.

In the final analysis, the statute clearly mandates that the proper standard determinative of whether a worker remains totally and permanently disabled when the 800-week conclusive-presumption period ends is whether the worker's physical condition at that time comes within the statutory definition of total and permanent disability.[13] It was factually determined by the WCAB that the plaintiff's disability had not improved. Plaintiff's entitlement to benefits was factually established.

## B

Having determined that plaintiff is entitled to

[12] In assessing *Clark,* even if the general disability standard were to be applied, we would be unable to find that this bilateral amputee was able to compete with the able-bodied for jobs within the type of work in which he was injured. The impairment to Mr. Clark's wage-earning capacity would remain as long as the physical aspect of general disability remained.

[13] MCL 412.8a; MSA 17.158(1) and MCL 412.10; MSA 17.160.

compensation benefits, we next address the issue of whether compensation is payable, *i.e.,* are these benefits subject to setoff by wages earned subsequent to the 800-week period.[14]

Plaintiff contends that setoff is not applicable in this case and cites *Halas v Yale Rubber Mfg Co,* 381 Mich 542; 164 NW2d 15 (1969), as support for this position. We find that *Halas* does not control the case at bar.

Mr. Halas, while employed as an unskilled laborer in 1950, suffered the amputation of both hands. It is important to note at this point that an employer's liability for compensation benefits, both the amount of benefits and the time period over which these benefits extend, is determined in compliance with the law in effect on the date of injury. *Tarnow v Railway Express Agency,* 331 Mich 558, 563; 50 NW2d 318 (1951). On the date of Mr. Halas' injury, the law then in effect stated that the loss of both hands constituted total and permanent disability for which the employer was liable for a specific amount of benefits for a specified number of weeks.[15]

While Mr. Halas was receiving these benefits certain amendments to the Worker's Disability Compensation Act were enacted. The 1955 amend-

[14] Setoff is mandated in paragraph 1 of MCL 412.11; MSA 17.161 which reads:

"The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury." As amended, 1965 PA 44.

[15] MCL 412.9; MSA 17.159 and MCL 412.10; MSA 17.160.

ment to § 9(a) changed the initial employer liability to the totally and permanently disabled worker from a specified number of weeks to "the duration of such permanent and total disability".[16] This provision had no effect on Mr. Halas, however, because his employer's liability had already been determined as of the date of injury as discussed above.

Another provision of the 1955 amendment, however, did have a major effect on Mr. Halas' situation. This was the creation of the Second Injury Fund which made increased benefits available to the totally and permanently disabled worker. The fund became liable for: (1) the difference between the amount of basic benefits in effect on the date of injury for which the employer was liable and the current amount of benefits in accordance with the schedule of benefits, and (2) the continuance of benefits for the duration of the total and permanent disability of the worker in those cases where the date of injury was prior to June 25, 1955, when the employer's liability ended after a specified number of weeks.[17] Therefore, when the liability of Mr. Halas' employer had ended, the Second Injury Fund became solely liable for the continuation of Mr. Halas' benefits for the duration of his total and permanent disability.

After Mr. Halas had received benefits for 800 weeks from the date of his injury, a hearing was held to determine if he was in fact totally and permanently disabled at that time and thus entitled to the continuation of benefits payable from the fund. At the time of the hearing, Mr. Halas was employed at wages equal to or higher than his earnings at the time of the injury.

---

[16] 1955 PA 250.

[17] This portion of § 9(a) was further clarified by 1956 PA 195.

The hearing referee held on February 21, 1966, that Mr. Halas was totally and permanently disabled and that although he was employed at wages equal to or higher than his earnings at the time of his injury, no setoff of wages was allowed. The Workers' Compensation Appeal Board and the *Halas* Court affirmed these findings.

The initial issue addressed by this Court in *Halas* was whether Mr. Halas continued to be totally and permanently disabled in compliance with the standard we have previously considered as set forth in § 9(a):

"The conclusive presumption of total and permanent disability shall not extend beyond 800 weeks from the date of injury, and thereafter the question of permanent and total disability shall be determined in accordance with the fact, as the fact may be at that time." MCL 412.9; MSA 17.159 as amended by 1965 PA 44.

The *Halas* Court adopted the factual findings of the WCAB that Mr. Halas was still permanently and totally disabled and thus entitled to the continuation of benefits to be paid by the fund.

The other issue which the *Halas* Court addressed was whether Mr. Halas was entitled to receive benefits at current rates without diminution or setoff for his current earnings. The Court found conflict between §§ 9 and 11. The pertinent portion of § 9(a) then provided:[18]

"Payments from this second injury fund shall continue after the period for which any such person is otherwise entitled to compensation under this act for the duration of such permanent and total disability *according to the full rate provided in the schedule of*

---

[18] This emphasized portion of § 9 was deleted in the 1968 amended act, 1968 PA 227.

*benefits."* MCL 412.9; MSA 17.159 as amended by 1965 PA 44.

The pertinent portion of § 11, the setoff provision, stated:

"The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. The compensation payable, when added to his wage earning capacity after the injury in the same or another employment shall not exceed his average weekly earnings at the time of such injury." MCL 412.11; MSA 17.161 as amended by 1965 PA 44.

The *Halas* Court determined that the Legislature did not intend that § 9 should be subject to § 11. The Court's rationale centered on the fact that § 11 was enacted in 1927, well before the 1955 and 1956 amendments which instituted "a new concept for compensating" the seriously injured worker: creation of the Second Injury Fund.[19] *Halas,* 550. Section 9(a) was interpreted to mean that when the employer's obligation to pay compensation benefits ended, the Second Injury Fund would continue payment of the benefits. Since Mr. Halas' injury occurred prior to the 1955 and 1956 amendments to § 9, his employer's liability for benefits had ended and it was only the Second Injury Fund's liability in the post-800-week period which was determined.

[19] 1955 PA 250; 1956 PA 195.

The *Halas* Court's rationale for denying setoff is premised on this fact. Because the post-800-week benefits were to be paid by the fund, the cost thus assessed to all employers and not to the individual employer, the Court opined that this new concept for compensating the totally and permanently injured should not be subject to § 11's setoff provision which was enacted in 1927.

This line of reasoning is not applicable to the case at bar. Expanding the previously limited liability of employers for a specific amount of benefits for a specified number of weeks, the 1955 amendment to § 9 made employers liable for all basic compensation benefits (those in effect at the time of the injury) for the duration of workers' total and permanent disabilities. *Welch v Jackson County Road Comm,* 51 Mich App 372; 214 NW2d 871 (1974), *lv den* 392 Mich 757 (1974); *Miller v Dunn Paper Co,* 47 Mich App 471; 209 NW2d 519 (1973). Thus, in cases where the date of injury is subsequent to June 25, 1955, the effective date of this amendment, the employer is liable for basic benefits for the duration of the worker's permanent and total disability. Unlike *Halas,* the employer's liability does not end after a specified number of weeks when the Second Injury Fund takes over payment of the benefits. Rather, the Second Injury Fund is only liable in those cases for any increases in benefits in accordance with subsequent statutory amendments.[20]

Mr. Kidd's 1960 injury date places his case within this category. Unlike the employer in *Halas,* Mr. Kidd's employer is liable for the basic benefits for the duration of Mr. Kidd's disability. Because Mr. Kidd's employer continues to be liable

[20] These benefits are calculated by subtracting the amount of the basic benefit paid by the employer from the current amount of benefits provided in the schedule of benefits.

for the basic benefits, the *Halas* Court's rationale on this point does not apply to the case at bar.[21]

Also to support its view that the setoff provision of § 11 is not applicable to § 9, the *Halas* Court relied on the language in § 9(a) which states that payments from the Second Injury Fund shall be paid "according to the full rate provided in the schedule of benefits". From this language, the *Halas* Court inferred that the Legislature intended post-800-week total and permanent disability benefits to be exempt from § 11's setoff provision. We do not believe that this language of § 9(a), read in context, supports such an inference. Section 9(a) extant at the time of the *Halas* Court's analysis read in its entirety as follows:

"Sec. 9. (a) While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee, a weekly compensation of 66-2/3% of his average weekly wages, but not more than $58.00 as of September 1, 1965, $61.00 as of September 1, 1966 and $64.00 as of September 1, 1967 if such injured employee has no dependents; $63.00 as of September 1, 1965, $66.00 as of September 1, 1966 and $69.00 as of September 1, 1967 if 1 dependent; $70.00 as of September 1, 1965, $72.00 as of September 1, 1966 and $75.00 as of September 1, 1967 if 2 dependents; $77.00 as of September 1, 1965, $79.00 as of September 1, 1966 and $81.00 as of September 1, 1967 if 3 dependents; $84.00 as of September 1, 1965, $86.00 as of September 1, 1966 and $87.00 as of September 1, 1967 if 4 dependents and $91.00 as of September 1, 1965, $92.00 as of September 1, 1966 and $93.00 as of September 1, 1967 if 5 or more dependents, except as provided in subsection (f). Compensation shall be paid for the duration of the disability. Weekly payments shall in no event be less than $27.00 if there are no dependents; $30.00 if 1 depen-

[21] See Downing, *Workmen's Compensation,* 21 Wayne L Rev 735, 740 (1975).

dent; $33.00 if 2 dependents; $36.00 if 3 dependents; $39.00 if 4 dependents; and $42.00 if 5 or more dependents; except as provided in subsection (f). Compensation shall be paid for the duration of the disability. The conclusive presumption of total and permanent disability shall not extend beyond 800 weeks from the date of injury, and thereafter the question of permanent and total disability shall be determined in accordance with the fact, as the fact may be at that time. Any permanently and totally disabled person as defined in this act who, on or after June 25, 1955, is entitled to receive payments of workmen's compensation under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall after the effective date of any amendatory act, by which his disability is defined as permanent and total disability or by which the weekly benefit for permanent and total disability is increased, receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now or shall hereafter be entitled to receive from his employer under the provisions of this act as the same was in effect at the time of his injury and the amount now provided for his permanent and total disability by this or any other amendatory act with appropriate application of the provisions of paragraphs (b), (c), (d) and (e) of this section since the date of injury. Payments from this second injury fund shall continue after the period for which any such person is otherwise entitled to compensation under this act for the duration of such permanent and total disability *according to the full rate provided in the schedule of benefits.*" (Emphasis added.) MCL 412.9; MSA 17.159 as amended by 1965 PA 44.

We are persuaded that the last sentence of § 9(a) means that, limited to those cases where the employer's liability to the totally and permanently disabled has ended, the benefits will continue to be paid by the Second Injury Fund for the duration of

the total and permanent disability at the current rate as set forth in the schedule of benefits. The Legislature has made it clear that the Second Injury Fund's liability differs from that of the employer. As we have discussed, the Second Injury Fund, unlike the employer, is liable for increases in the amount of benefits payable as provided in amendments to the Worker's Disability Compensation Act. Also, unlike the employer, the Second Injury Fund, at the time applicable to this case, was not subject to the 2/3 limitation of weekly benefits. *King v Second Injury Fund,* 382 Mich 480; 170 NW2d 1 (1969). While the employer's liability is established on the date of injury, the fund's liability fluctuates as applicable portions of the act are amended but is always payable at the then current rate as set forth in the schedule of benefits. We find no basis in the language of § 9 for the *Halas* Court's inference that post-800-week total and permanent disability benefits are exempt from § 11's setoff provision.

Section 11 sets forth the intended method of computing "weekly loss in wages referred to in this act". This method applies to all cases in which "weekly loss in wages" must be computed. Section 11 also limits the compensation payable to not exceed the average weekly earnings at the time of injury. There is no specific language in § 11 itself which limits the applicability of this setoff to certain types of disability only. Rather, § 11 is written as the general rule.

Pursuant to legislative intent certain exceptions to § 11's setoff provision have been recognized. For example, it is well-established that § 11 is not applicable to the mandatory disability benefits payable for specific losses or during the 800-week period of conclusively presumed total and perma-

nent disability. *Louagie v Merritt, Chapman & Scott,* 382 Mich 274, 283-284; 170 NW2d 13 (1969). However, in these situations language in other sections of the act indicates that the Legislature did not intend that § 11's setoff should apply. With respect to the instant situation, however, we are not persuaded that the language of § 9 suggests that the Legislature intended the post-800-week period to be another such exception. This Court should not add to the exceptions to the statutory mandate of § 11 without a clearer indication of legislative intent than the inference relied on in *Halas.* See *Powell, supra,* 406 Mich 347-348; *Lynch v Briggs Mfg Co,* 329 Mich 168; 45 NW2d 20 (1950); *MacDonald v Great Lakes Steel Corp,* 268 Mich 591; 256 NW 558 (1934).

Accordingly, we hold that the compensation payable to a totally and permanently disabled worker subsequent to the initial 800-week period is subject to § 11's wage setoff.

In the case at bar, the WCAB found that Mr. Kidd's physical condition had not improved. Therefore, he remained totally and permanently disabled and entitled to post-800-week compensation benefits. Mr. Kidd's post-800-week employment at wages greater than when he was injured subjects these benefits to § 11.[22]

## CONCLUSION

The proper standard to employ in determining whether a worker who has received total and

---

[22] We do not address those post-800-week situations in which either the employee has never been employed during the post-injury period or the employee was employed at some time during the post-injury period but has subsequently stopped working. For guidance in these situations we direct the reader to *Powell, supra,* 406 Mich 346-352, and *Ferns v Russ Graham Shell Service,* 413 Mich 550; 321 NW2d 380 (1982).

permanent disability benefits for 800 weeks contin-ues to be totally and permanently disabled and thus entitled to compensation benefits is whether the worker's physical condition at the time comes within the statutory definition of total and perma-nent disability. MCL 412.10; MSA 17.160. We fur-ther hold that the setoff provision of MCL 412.11; MSA 17.161 is applicable to this post-800-week period.

This case is remanded to the WCAB for proceed-ings consistent with this opinion.

FITZGERALD, C.J., and KAVANAGH, WILLIAMS, LEVIN, COLEMAN, and RYAN, JJ., concurred.