1998 ME 247

David TRACY

v.

HERSHEY CREAMERY COMPANY
and Maine Employers' Mutual
Insurance Company.

Supreme Judicial Court of Maine.

Argued Sept. 8, 1998.
Decided Nov. 23, 1998.

Jeffrey L. Cohen (orally), McTeague, Higbee, MacAdam, Case, Watson & Cohen, P.A., Topsham, attorney for employee.

Stephen W. Moriarty (orally), Norman, Hanson & DeTroy, Portland, attorney for employer.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] David D. Tracy appeals from a decision of the Workers' Compensation Board denying his petition for specific loss benefits pursuant to 39–A M.R.S.A. § 212(3)(M) (Supp.1997). Tracy suffered an injury to one eye in a work-related accident. Because he did not suffer the loss of 80% or more of his vision after medical intervention, the Board concluded that Tracy was not entitled to an award of specific loss benefits. We agree and affirm the decision of the Board.

I. Background

[¶ 2] Tracy's injury occurred on May 13, 1994, during his employment with Hershey Creamery Company, when a staple became lodged in his eye. The injury resulted in an immediate 95% vision loss in that eye. Tracy underwent surgery following the injury to correct a corneal laceration and to remove a traumatic cataract. In the process of the surgery, the natural lens of Tracy's eye was removed. Although the first surgery did not improve his vision above the initial 95% vision loss, his vision was improved through a second surgery in July 1994 when an artificial lens was implanted. Laser surgery in the fall of 1994 further improved his vision. Thus, approximately six month after his injury, Tracy's vision was restored to roughly a 60–70% vision loss without the aid of glasses or contact lenses. Tracy then filed a petition for award seeking 162 weeks of specific loss

benefits pursuant to 39–A M.R.S.A. § 212(3)(M).

[¶ 3] Paragraph 212(3)(M) requires an 80% vision loss to trigger the employer's liability for specific loss benefits. 39–A M.R.S.A. § 212(3)(M). There is no factual dispute that, after the injury but prior to the surgery, Tracy suffered greater than an 80% vision loss, and that after the surgeries, his vision, without glasses or contact lenses, has been restored to less than an 80% vision loss. The Board formulated the issue as follows: "[B]oth parties agree that if the loss of vision is measured prior to correction, Mr. Tracy is entitled to specific loss benefits under 212(3)(M). If the loss of vision is measured after correction, however, Mr. Tracy is not entitled to specific loss benefits." Relying on our decisions interpreting former title 39, the Board concluded that the determination of the percentage of vision loss must be based on Tracy's vision after corrective surgery and, therefore, denied specific loss benefits. *See Wasson v. Northeast Motor Co.*, 253 A.2d 349, 352 (Me.1969); *Cook v. Colby College*, 155 Me. 306, 311–12, 154 A.2d 169, 172 (1959). We granted Tracy's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1997).

## II. Specific Loss Benefits

[¶ 4] We look first to the history of specific loss benefits. The current version, 39–A M.R.S.A. § 212, provides, in pertinent part:

**§ 212. Compensation for total incapacity**

**1. Total incapacity.** While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation equal to 80% of the employee's after-tax average weekly wage, but not more than the maximum benefit under section 211. Compensation must be paid for the duration of the incapacity.

. . . .

**3. Specific loss benefits.** In cases included in the following schedule, the incapacity is considered to continue for the period specified, and the compensation due is 80% of the after-tax average weekly wage subject to the maximum benefit set in section 211. Compensation under this subsection is available only for the actual loss of the following:

. . . .

**M.** Eye, 162 weeks. Eighty percent loss of vision in one eye constitutes the total loss of that eye.

. . . .

39–A M.R.S.A. § 212.

[¶ 5] "Schedule" or "specific loss" benefits are not new. Maine has expressly provided some form of schedule benefits since the original enactment of the Workers' Compensation Act in 1915. P.L.1915, ch. 295, § 14; *see e.g., Estabrook v. Steward-Read Co.*, 129 Me. 178, 186, 151 A. 141, 145 (1930). Prior to 1987, the former Act provided 100 weeks of total incapacity benefits "[f]or the loss of an eye, or the reduction of the sight of an eye, *with glasses*, to 1/10 of the normal vision. . . ." *See, e.g.,* 39 M.R.S.A. § 56 (Pamph.1986), *repealed by* P.L.1987, ch. 559, Pt. B, § 33. Prior to 1965, specific loss benefits were intended to compensate employees for loss of earning capacity. *See Cook*, 155 Me. at 311, 154 A.2d at 171 ("The theory of the scheduled injuries is that the claimant 'has sustained a distinct loss of earning power in the near or not remote future,'" quoting *Clark's Case*, 120 Me. 133, 137, 113 A. 51, 52 (1921)).

[¶ 6] In 1965 the Legislature amended the specific loss statute to permit the award of schedule benefits "in addition to" incapacity benefits. P.L.1965, ch. 408, § 5. *See, e.g.,* 39 M.R.S.A. § 56 (Pamph.1986), *repealed and replaced by* P.L.1987, ch. 559, Pt. B, § 31. Following the 1965 amendment, schedule "permanent impairment" benefits were no longer intended as compensation for lost earning capacity, or loss of "industrial use," but as compensation for lost bodily function. *See, e.g., Delorge v. NKL Tanning, Inc.*, 578 A.2d 1173, 1174 (Me.1990) ("[T]he award for permanent impairment has no relation to work incapacity or wage replacement. Rather it is based on the loss of function of part of the body due to work-related injury.").

[¶ 7] In 1992 the Legislature abolished specific loss permanent impairment benefits

based on loss of bodily function. *Maine Workers' Compensation Act of 1992*, P.L. 1991, ch. 885. Today, the benefits provided by section 212(1) are expressly intended to compensate employees for loss of earning capacity. *See Clark v. International Paper Co.*, 638 A.2d 65, 67 (Me.1994). The benefits provided by section 212(2) and (3) are intended to compensate employees for catastrophic injuries. *See* 39–A M.R.S.A. § 221(1). While the purpose of benefits pursuant to the new Act is primarily to compensate employees for loss of earnings, the specific loss provisions also recognize "human factors substantially in addition to the wage loss concept" that are attendant with the traumatic loss of a body part or vision resulting from a work-related injury.[1] It is in this context that we address the issue presented here.

## III. Discussion

■ [¶ 8] We first address whether Tracy's temporary vision loss prior to medical intervention was sufficient to trigger his employer's obligation to pay specific loss benefits. The legislative history is instructive. Pursuant to the former Act, when specific loss benefits were intended as compensation for permanent impairment, the determination of vision loss was made at the point of "maximum medical improvement." *See, e.g.,* 39 M.R.S.A. § 56 (Pamph.1986), *repealed and replaced by* P.L.1987, ch. 559, Pt. B, § 31. Maximum medical improvement was defined as "the date after which further recovery and further restoration of function can no longer be reasonably anticipated, based upon reasonable medical probability." *See* 39 M.R.S.A. § 2(14) (1989), *repealed and replaced by* P.L.1991, ch. 885, § A–7, A–8, *codified at* 39–A M.R.S.A. § 102(15) (Supp. 1997).

■ [¶ 9] Although the maximum medical improvement language has not been expressly imported into the new specific loss benefits provisions, the new provisions contain similar concepts expressed by use of the terms "total

and permanent loss," and "actual loss" throughout subsections 2 and 3 of section 212. *See also Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 588 (Me.1996) (interpreting title 39–A in light of longstanding judicial interpretations of similar provisions in former title 39). Accordingly, the determination as to whether an employee's loss of vision exceeds 80% for purposes of Paragraph 212(3)(M) should be made when the work-related condition has reached a reasonable medical endpoint. Here, Tracy's vision was restored to less than 80% loss within approximately 6 months of the injury.

■ [¶ 10] We next address Tracy's contention that his ongoing vision loss even after medical intervention triggers the employer's responsibility to pay specific loss benefits because the implanted lens is analogous to glasses, and without that implant his vision loss would approximate 95%. He argues that Paragraph 212(3)(M), unlike the previous statute, does not base the determination of vision loss on the employee's post-injury vision "with glasses." Accordingly, he argues that his vision loss should be evaluated in the absence of the implanted lens.

[¶ 11] It is not necessary in this case to determine the significance of the removal of the phrase "with glasses" in Paragraph 212(3)(M), however, because we disagree with Tracy's assertion that a surgical implanted lens is analogous to an external contact lens or "glasses" as that term was understood in 1919. *See* P.L.1919, ch. 238, § 16. The term "glasses," then and now, refers to externally applied lenses, and not a surgical correction to the eye. The fact that a part of the medical intervention included the insertion of an artificial lens does not place him in the same circumstances as a person whose vision loss exceeds 80% without the benefit of glasses. Because his vision loss after successful medical intervention, with or without the assistance of external glasses or contact lenses, does not approach

---

1. Consistent with this purpose, specific loss benefits may not be reduced by the amount of payments of other types of wage loss benefits, e.g., social security, pension or retirement benefits. *See* 39–A M.R.S.A. § 221(1) (Supp.1997). Subsection 221(1) provides that, "because benefits

under section 212, subsections 2 and 3 *are benefits that recognize human factors substantially in addition to the wage loss concept,* coordination of benefits should not apply to such benefits." 39–A M.R.S.A. § 221(1) (Supp.1997) (emphasis added).

the 80% loss required by section 212, his entitlement to benefits is not affected by the presence or absence of the phrase "with glasses" in Paragraph 212(3)(M).[2]

[¶ 12] Moreover, to allow recovery for the "actual" loss of an eye in circumstances where the employee's vision has been significantly restored would be directly contrary to the Legislature's intent to allow specific loss benefits only in instances of a total, catastrophic loss. Tracy's temporary loss of vision, corrected in part through surgery, is simply not comparable to the amputation of a body part. This conclusion should not be understood to minimize the trauma that Tra-

cy suffered when the staple entered his eye. Many employees, however, suffer extreme and traumatic injuries which never result in the receipt of specific loss benefits because no body part was actually lost.

The entry is:

Decision of the Workers' Compensation Board affirmed.

2. The Michigan Supreme Court has reached the opposite conclusion in a factually similar case. See *Lindsay v. Glennie Indus., Inc.*, 379 Mich. 573, 153 N.W.2d 642, 644(Mich.1967). Although we have stated that we may "look to decisions of Michigan courts for guidance when the courts have applied an analysis that reflects the same policy and language as Maine's statute," *Thompson v. Claw Island Foods*, 1998 ME 101, ¶ 13, 713 A.2d 316, 319 (footnote omitted), we are not persuaded that the rationale of the Michigan Supreme in *Lindsay*, 153 N.W.2d at 644, is applicable to Paragraph 212(3)(M), in light of our own unique legislative history with respect to specific loss benefits. See *Bureau*, 678 A.2d at 590 (rejecting consideration of Michigan decisions when those decisions were based not solely on statutory language, but on longstanding Michigan common law).