1999 ME 16

Victoria BOEHM

v.

AMERICAN FALCON CORPORATION

and

Redland Insurance Co.

Supreme Judicial Court of Maine.

Argued Jan. 7, 1999.

Decided Jan. 26, 1999.

Anthony J. Peverada, Jr., Senior Staff Attorney, Workers' Compensation Board, Augusat, ME for appellee.

Robert J. Bower, Jr., Alexander F. McCann, Norman, Hanson & DeTroy, LLC, Portland, ME, for appellant.

Before CLIFFORD, RUDMAN, DANA, SAUFLEY, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] American Falcon Corp. appeals from a decision of the Workers' Compensation Board granting the employee's petition for award of specific loss benefits pursuant to 39–A M.R.S.A. § 212(3) (Supp.1998). American contends that, because specific loss benefits, like incapacity benefits, are compensation for lost earnings, the employer should be entitled to offset the award of specific loss benefit by the amount of incapacity benefits already paid to the employee. We agree and vacate the decision of the Board.

[¶ 2] The facts are not in dispute. Victoria Boehm suffered a work-injury on December 28, 1995, resulting in the loss of the fourth finger of her right hand. American voluntarily paid total incapacity benefits between December 1995 and July 1996. Boehm returned to work for a different employer in August 1996 and was paid partial benefits at varying rates until her compensation was finally discontinued in April 1997.

[¶ 3] Boehm filed a petition for specific loss benefits with the Board in 1997. The Board granted the petition and awarded sixteen weeks of specific loss benefits pursuant to Paragraph 212(3)(E). We granted American's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1998).

[¶ 4] Section 212 provides, in pertinent part:

**§ 212. Compensation for total incapacity**

   **1. Total incapacity.** While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation equal to 80% of the employee's after-tax average weekly wage, but not more than the maximum benefit under section 211. Compensation must be paid for the duration of the incapacity.

   . . . .

   **3. Specific loss benefits.** In cases included in the following schedule, the incapacity is considered to continue for the period specified, and the compensation due is 80% of the after-tax average weekly wage subject to the maximum benefit set in section 211. Compensation under this

subsection is available only for the actual loss of the following:

. . . .

E. Fourth finger, 16 weeks.

. . . .

39-A M.R.S.A. § 212.

[¶ 5] We recently noted: " 'Schedule' or 'specific loss' benefits are not new. Maine has expressly provided some form of schedule benefits since the original enactment of the Workers' Compensation Act in 1915." *Tracy v. Hershey Creamery Co.*, 1998 ME 247, ¶ 5, 720 A.2d 579, 580 (citing P.L.1915, ch. 295, § 14). Prior to 1965, because both permanent impairment and incapacity benefits were intended to compensate employees for lost earning capacity, employees were prohibited from receiving concurrent permanent impairment and incapacity compensation. *See id.; Campbell v. Bates Fabrics, Inc.*, 422 A.2d 1014, 1015, n. 5 (Me.1980).

[¶ 6] In 1965, former section 56 was amended to provide that permanent impairment benefits could be awarded "in addition to" benefits for incapacity. P.L.1965, ch. 408, § 5. *See e.g.*, 39 M.R.S.A. § 56 (Pamph. 1986), *repealed and replaced by* P.L.1987, ch. 559, Pt. B, § 31 (emphasis added) ("Compensation under this section is in addition to any compensation under section 54-B [total incapacity] or 55-B [partial incapacity] received by the employee"). After 1965 permanent impairment benefits were regarded as something different from ordinary wage loss benefits. As we stated in *Delorge v. NKL Tanning, Inc.*, 578 A.2d 1173, 1174 (Me.1990), "[s]ince 1965 the award of permanent impairment has no relation to work incapacity or wage replacement. Rather it is based on the *loss of function* of part of the body due to work-related injury" (emphasis added).

[¶ 7] In order to reduce workers' compensation costs, generally, former section 56-B was amended in 1991 to expressly permit an offset of incapacity benefits against benefits for permanent impairment. P.L.1991, ch. 615, § D-8, *codified at* 39 M.R.S.A. § 56-B (Supp.1992) (effective for injuries occurring after October 17, 1991 and before January 1, 1993). The amended permanent impairment statute provided: "Compensation under this section is reduced by any compensation under section 54-B [total incapacity] or 55-B [partial incapacity] received by the employee." *Id.*

[¶ 8] Boehm contends that the failure to include this latter sentence in subsection 3 indicates a legislative intent not to permit an offset. We disagree. The statutory language that authorized in 1965 concurrent payment of wage loss benefits and permanent impairment benefits was the phrase "in addition to." The more specific language added to the statute in 1991, providing that permanent impairment benefits shall be "reduced by" incapacity benefits, was intended to undo the phrase "in addition to." Because the new statute contains neither the phrase "in addition to" prohibiting an offset, or the "reduced by" language, we interpret the specific loss provision in the same way as we interpreted the pre–1965 law, i.e., to allow an offset.

[¶ 9] More importantly, the new Act, title 39-A, has abolished permanent impairment benefits. *See Clark v. International Paper Co.*, 638 A.2d 65, 67 (Me.1994). The clear purpose of schedule benefits pursuant to the new Act is to create a presumptive *incapacity* benefit for the loss of, or injury to, specific body parts. Employers since 1991 have been permitted to reduce specific loss benefits by the amount of incapacity benefits paid to the employee, even when specific loss benefits were, at that time, considered compensation for loss of bodily function. The former statute never permitted a duplicative recovery of incapacity benefits and we see nothing in the express language or purpose of title 39-A to allow a duplicative recovery of specific loss and incapacity benefits.

[¶ 10] The only provision in the Act suggesting a distinction between "specific loss" benefits and other incapacity benefits is 39-A M.R.S.A. § 221(1) (Supp.1998). Section 221 addresses the "coordination of benefits," i.e., the ability of an employer to offset workers' compensation payments by payments made to other nonworkers' compensation benefit plans, e.g. social security, pension, wage continuation plans, etc. *Id.* Pursuant to section 221 specific loss benefits are not subject to

coordination. *Id.* Section 221 provides, in pertinent part:

> This section does not apply to payments made to an employee as a result of liability pursuant to section 212, subsection 2 or 3 for the specific loss period set forth by law. It is the intent of the Legislature that, because benefits under section 212, subsections 2 and 3 are benefits that recognize human factors substantially in addition to the wage loss concept, coordination of benefits should not apply to such benefits.

39–A M.R.S.A. § 221(1). Both the Board and Boehm rely heavily on the "human factors" language of subsection 221(1) as support for the conclusion that specific loss benefits may not be offset against ordinary incapacity benefits. In light of the structure of section 212, its legislative history, and the fact that subsection 221(1) can support both the assertions of the employer and employee, however, we do not find the reference to "human factors" in 221 sufficient support for the Board's conclusion that there is no offset in the absence of express statutory language.

 [¶ 11] Boehm also contends that, if the employer can offset specific loss benefits against ordinary incapacity benefits, employees with the most serious injuries, like Boehm, who receive long-term total incapacity benefits as a result of their injuries, will gain nothing by bringing a petition for specific loss benefits. Although in some cases specific loss benefits will be entirely offset by incapacity benefits, we do not agree that employees gain nothing from the statute. In recognition of the "human factors," the specific loss provisions provide a recovery of a minimum number of weeks for the loss of enumerated body parts. Moreover, the amount of that minimum recovery is not affected by the employee's actual wage loss, *see* Statement of Fact, L.D. 2464, § 212 (115th Legis.1991) ("[s]ubsection 3 lists specific loss benefits under which the employee is entitled to receive the listed number of weeks of benefits for the specific amputation,

*regardless of any actual loss in wages*" (emphasis added)), nor can it be reduced by or coordinated with other types of employee benefits, 39–A M.R.S.A. § 221(1). Although not permitting a double recovery of incapacity and specific loss benefits, the statute, nevertheless, provides a real benefit to many injured employees. We conclude that, in the absence of express statutory language to the contrary, employers may offset specific loss benefits by the amount of incapacity benefits previously paid to the employee for the same injury.

The entry is:

The decision of the Workers' Compensation Board vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with this decision.