2012 ME 41

### John MITTON

v.

### VERIZON et al.

Supreme Judicial Court of Maine.

Argued: Feb. 14, 2012.
Decided: March 22, 2012.

James J. MacAdam, Esq. (orally), Nathan A. Jury, Esq., and David E. Hirtle, Esq., MacAdam Jury, P.A., Portland, for appellant John Mitton.

Stephen W. Moriarty, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for appellees Verizon/NYNEX and Sedgwick Claims Management Services.

Stephen W. Moriarty, Esq., argued, for appellees Verizon/NYNEX and Sedgwick Claims Management Services.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] John Mitton appeals from a decision of a Workers' Compensation Board hearing officer (*Collier, HO*) determining that because Mitton had received 800 weeks of permanent total incapacity benefits pursuant to the conclusively presumptive time period established in 39–A M.R.S. § 212(2)(G) (2011), the employer could prospectively take statutory offsets against Mitton's benefits pursuant to 39–A M.R.S. § 221 (2011). We affirm the hearing officer's decision.

## I. BACKGROUND

[¶ 2] Seventeen years ago, John Mitton suffered a work-related stroke on February 15, 1995, while employed by NYNEX, Verizon's predecessor. In a 1997 decree, the Board awarded him ongoing total incapacity benefits pursuant to 39–A M.R.S. § 212(1) (2011). In 2003, the Board awarded him 800 weeks of total incapacity benefits for the permanent and total loss of industrial use of one leg and one arm, pursuant to 39–A M.R.S. § 212(2)(G).

[¶ 3] Section 212(2) provides that for the cases listed therein, including the "permanent and total loss of industrial use" of one leg and one arm, "it is conclusively presumed for 800 weeks from the date of injury that the injury resulted in permanent total incapacity and that the employee is unable to perform full-time remunerative work in the ordinary competitive labor market in the State." *Id.* § 212(2)(G).[1] These benefits are not subject to coordination with other benefits "for the specific loss period set forth by law." 39–A M.R.S. § 221(1) (2011).

[¶ 4] After paying total incapacity benefits for the 800–week statutory period, Verizon filed a petition for review and for determination of offset rights. The parties stipulated to the following facts: Mitton had received 800 weeks of total incapacity benefits pursuant to section 212(2)(G) by the end of June 2010; as a result of the work-related stroke, Mitton has no current earning capacity; and Mitton currently receives an employer-funded pension from Verizon.

[¶ 5] The hearing officer granted Verizon's petitions for review and for determination of offset rights and awarded Mitton ongoing incapacity benefits pursuant to the general total incapacity provision, 39–A M.R.S. § 212(1), subject to coordination pursuant to 39–A M.R.S. § 221.

[¶ 6] Mitton filed a motion for additional findings of fact and conclusions of law, along with proposed findings, which the hearing officer denied. We granted Mitton's petition for appellate review pursuant to M.R.App. P. 23(c) and 39–A M.R.S. § 322(3) (2011).

## II. DISCUSSION

■ [¶ 7] Mitton contends that he remains entitled to receive total incapacity benefits pursuant to section 212(2)(G) without statutory offsets even after the 800–week period has expired because "in accordance with the facts, as they ... exist" at the end of 800 weeks, he undisputedly continues to suffer the loss of industrial use of one leg and one arm. *See* 39–A M.R.S. § 212(2). Although it is undisputed that Mitton remains totally incapacitated from work, we nevertheless conclude that after 800 weeks, Verizon is entitled to reduce the total benefit by amounts authorized by 39–A M.R.S. § 221.

■ [¶ 8] When construing a provision of the Workers' Compensation Act, our purpose is to give effect to the legislative intent. *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994). In so doing, we first look to the plain meaning of the statutory language, and "construe that language to avoid absurd, illogical or inconsistent results." *Id.* "If the statutory language is ambiguous, we then look beyond the plain meaning and examine other indicia of legislative intent, including its legislative history." *Id.* Decisions of the Board interpreting ambiguous provisions of the Workers' Compensation Act are ordinarily "entitled to great deference and will be upheld on appeal unless the statute plainly compels a different result." *Id.* (quotation marks omitted).

[¶ 9] Title 39–A M.R.S. § 212(2) and (3) provide for compensation for the loss of certain body parts in the form of a presumptive period of incapacity. *Boehm v. American Falcon Corp.*, 1999 ME 16, ¶ 9, 726 A.2d 692. Title 39–A M.R.S. § 212(2), at issue here, provides for "permanent total incapacity" benefits intended for those who sustain, among other things, the catastrophic loss of more than one body part. *Saucier v. Nichols Portland*, 2007 ME 132,

1. Eight hundred weeks is equivalent to 15.38 years.

¶ 10, 932 A.2d 1178. Section 212(2) provides:

> **2. Presumption of Total Incapacity.** For the purposes of this Act, in the following cases it is conclusively presumed for 800 weeks from the date of injury that the injury resulted in permanent total incapacity and that the employee is unable to perform full-time remunerative work in the ordinary competitive labor market in the State. Thereafter the question of permanent and total incapacity must be determined in accordance with the facts, as they then exist. The cases are:
>
> > A. Total and permanent loss of sight of both eyes;
> >
> > B. Actual loss of both legs or both feet at or above the ankle;
> >
> > C. Actual loss of both arms or both hands at or above the wrist;
> >
> > D. Actual loss of any 2 of the members or faculties in paragraph A, B or C;
> >
> > E. Permanent and complete paralysis of both legs or both arms or one leg and one arm;
> >
> > F. Incurable insanity or imbecility; and
> >
> > G. Permanent and total loss of industrial use of both legs or both hands or both arms or one leg and one arm.
>
> For the purpose of this subsection such permanency may be determined no later than 30 days before the expiration of 500 weeks from the date of injury.

[¶ 10] Benefits paid pursuant to section 212(2) or (3) may be coordinated with "ordinary" workers' compensation benefits.

*Boehm,* 1999 ME 16, ¶ 11, 726 A.2d 692. However, the Legislature has exempted these benefits from coordination with other, non-workers' compensation sources of wage replacement, such as Social Security, pensions, or wage continuation plans, "for the specific loss period set forth by law," because "benefits under section 212, subsections 2 and 3 are benefits that recognize human factors substantially in addition to the wage loss concept." 39–A M.R.S. § 221(1). "The benefits provided by section 212(2) and (3) are intended to compensate employees for catastrophic injuries" and the "human factors" recognized in section 221 are those "that are attendant with the traumatic loss of a body part or vision resulting from a work-related injury." *Tracy v. Hershey Creamery Co.,* 1998 ME 247, ¶ 7, 720 A.2d 579.

[¶ 11] In summary, section 212(2) "provide[s] a recovery of a minimum number of weeks" for a specified catastrophic loss that is "not affected by the employee's actual wage loss," and cannot "be reduced by or coordinated with other types of employee benefits" pursuant to section 221. *Boehm,* 1999 ME 16, ¶ 11, 726 A.2d 692.

[¶ 12] Mitton points out that the term "permanent and total incapacity" is used in the Act only in section 212(2). Thus, he contends, when the statute directs that "permanent and total incapacity must be determined" after the 800–week period expires, it plainly means that the hearing officer must determine whether the employee continues to suffer permanent and total incapacity and if so, is entitled to continued benefits under section 212(2), without offsets.[2]

---

**2.** Mitton also argues that the permanent and total incapacity statute's legislative history indicates that it was modeled on the nearly identical Michigan provision, Mich. Comp. Laws. §§ 418.361, 418.351, and Michigan authority that would have allowed for permanent and total benefits beyond the 800–week presumptive period of incapacity should be followed. *See* Statement of Fact, L.D. 2464, § 212 (115th Legis. 1991); *see also Ferns v.*

[¶ 13] Verizon asserts that the plain language of section 212(2) creates a single period of conclusively-presumed total incapacity. It argues that the word "thereafter" and the phrase "in accordance with the facts, as they then exist" require that a new analysis must be conducted after 800 weeks, pursuant to general incapacity provisions, which could indicate total, partial, or no ongoing earning incapacity.

[¶ 14] Being susceptible of either interpretation, section 212(2) may be ambiguous with respect to whether an injured employee is entitled to benefits pursuant to that provision beyond the minimum 800–week period. We do not need to resolve that ambiguity in this case, however, because the parties stipulated that Mitton has no current earning capacity and remains entitled to ongoing total incapacity benefits. The question for decision is whether, when the specified catastrophic loss continues after 800 weeks, the employee's total workers' compensation benefit continues unreduced by other types of benefits received.[3] The resolution is found not in section 212, but in section 221(1), which provides, in relevant part:

> This section does not apply to payments made to an employee as a result of liability pursuant to section 212, subsection 2 or 3 *for the specific loss period set forth by law.* It is the intent of the Legislature that, because benefits under section 212, subsections 2 and 3 are benefits that recognize human factors substantially in addition to the wage loss

concept, coordination of benefits should not apply to such benefits.

(Emphasis added.)

[¶ 15] Section 221(1) provides that benefits paid pursuant to section 212(2) are not subject to coordination "for the specific loss period set forth by law." Section 212(2) sets forth a specific loss period of 800 weeks. After benefits have been paid for that period, section 221 plainly provides that statutory offsets may be taken. Whether Mitton's total benefits are now being paid pursuant to section 212(1) or (2) is of no consequence; Verizon is entitled to reduce Mitton's workers' compensation benefits by the amount of his pension because it has paid unreduced benefits for the specific loss period. The hearing officer did not err in granting Verizon's petitions and awarding Mitton continued total incapacity benefits subject to statutory offsets.

■■■ [¶ 16] Mitton also argues that the hearing officer erroneously failed to impose on Verizon the burden of proving that Mitton's circumstances had changed. A party seeking to alter an existing benefit award on a petition for review must demonstrate a change in the employee's medical or economic circumstances sufficient to overcome the res judicata effect of the prior award. *Grubb v. S.D. Warren Co.,* 2003 ME 139, ¶ 7, 837 A.2d 117.

[¶ 17] The parties here stipulated that Mitton remains totally incapacitated from work. Essentially, they agreed that Mitton's medical and economic circumstances

*Russ Graham Shell Serv.,* 413 Mich. 550, 321 N.W.2d 380 (1982); *Kidd v. General Motors Corp.,* 414 Mich. 578, 327 N.W.2d 265 (1982). Because we resolve this case based on the parties' stipulation and the language of 39–A M.R.S. § 221 (2011), we do not reach this issue, but note that the *Kidd* opinion held that benefits received beyond the 800–week period

were subject to setoff. *See* 327 N.W.2d at 277.

3. Whether wages earned by an employee who continues to suffer a catastrophic loss as described in section 39–A M.R.S. § 212(2)(A)-(G) (2011) would result in an offset is not a question presented in this case and is therefore not addressed herein.

had not changed. If Verizon had argued that Mitton had regained some work capacity, and sought to reduce his benefit, then Verizon may have had the burden to establish that Mitton's medical or economic circumstances had improved. However, Verizon did not dispute that Mitton remains entitled to total incapacity benefits, but argued that his total benefits could, after 800 weeks, be reduced pursuant to section 221. To prevail on this argument merely required proof that Verizon had paid Mitton "for the specific loss period set forth by law." After that period expires, offsets are permitted. 39–A M.R.S. § 221; cf. *Farris v. Georgia–Pacific Corp.*, 2004 ME 14, ¶ 17, 844 A.2d 1143 (stating when seeking to cease payment of partial incapacity benefits, employer's burden is to prove that it has paid the maximum number of weekly benefits required to reach the durational cap, and that the level of permanent impairment is not above the statutory threshold).

[¶ 18] The parties stipulated that Verizon paid Mitton 800 weeks of permanent total incapacity benefits pursuant to section 212(2); thus, Verizon met its burden of proof that it has paid Mitton benefits for the specific loss period set forth by law.

The entry is:

The Workers' Compensation Board hearing officer's decision is affirmed.