MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2013 ME 32
Docket:      WCB-12-353
Argued:      February 13, 2013
Decided:     March 21, 2013

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

## DAVID L. SCOTT JR.

v.

## FRASER PAPERS, INC., et al.

GORMAN, J.

[¶1]   David L. Scott Jr. appeals from an award of the Workers'
Compensation Board (*Pelletier, HO*) granting him specific loss benefits for the
amputation of his finger but permitting Fraser Papers, Inc., and Sedgwick Claims
Management Services, Inc., to offset incapacity benefits paid after his injury but
before the amputation.   Scott contends that Fraser is not entitled to offset the
incapacity benefits because his right to specific loss benefits did not accrue until
the amputation.  We agree and vacate the Board's decision.

## I.  BACKGROUND

[¶2]  Scott suffered a crush injury to his left hand on May 23, 2003, while
working at Fraser's Madawaska paper mill.  He was out of work until December 3,
2003, and Fraser voluntarily paid him total incapacity benefits for that period.

2

After Scott returned to work, however, his condition deteriorated, and his left index or "first" finger had to be amputated. The surgery took place on April 23, 2004. Fraser voluntarily paid total incapacity benefits for the one additional week Scott was out of work after the surgery. Since Scott's return to work, he has suffered no additional wage loss attributable to the injury or the amputation.

[¶3] Scott filed a petition for specific loss benefits pursuant to 39-A M.R.S. § 212(3) (2012).[1] In lieu of presenting testimonial evidence, the parties filed stipulated facts with the Board. They agree that Scott is entitled to specific loss benefits because of the amputation for a period of thirty-eight weeks, which in this case amounts to $19,243.96. At issue is whether Fraser is entitled to an offset for the incapacity benefits it paid before the amputation, which totaled $13,880.92. Fraser has paid the difference and asserts that its obligation is fulfilled. The Board granted the petition for specific loss benefits, and it determined that Fraser is allowed to offset the incapacity benefits paid before the amputation.

[¶4] Scott moved for additional findings of fact and conclusions of law, which the Board denied, and then filed a petition for appellate review pursuant to 39-A M.R.S. § 322 (2011) and M.R. App. P. 23, which we granted.

---

[1] Title 39-A M.R.S. § 212(3) (2012) was recently amended in a manner not relevant to this appeal. P.L. 2011, ch. 647, § 6 (effective Aug. 30, 2012).

## II.  DISCUSSION

[¶5]   Scott contends that Fraser is not entitled to an offset for incapacity benefits paid after his injury but before the amputation because he was not entitled to specific loss benefits until his finger was actually amputated.  We construe the plain language of the workers' compensation statute in order to give effect to the Legislature's intent.  *Graves v. Brockway-Smith Co.*, 2012 ME 128, ¶ 9, 55 A.3d 456.  We consider the whole statutory scheme of which the section at issue is a part and attempt to achieve a harmonious result.  *Id.*  If the plain language of the statute is ambiguous, we consider other indicia of legislative intent, such as legislative history.  *Id.*   In addition, "[d]ecisions of the Board interpreting ambiguous provisions of the Workers' Compensation Act are ordinarily entitled to great deference and will be upheld on appeal unless the statute plainly compels a different result."  *Estate of Joyce v. Commercial Welding Co.*, 2012 ME 62, ¶ 12, 55 A.3d 411 (quotation marks omitted).

[¶6]   An employee is entitled to specific loss benefits following the amputation of certain body parts.  *See* 39-A M.R.S. § 212(3);[2] *Gibbs v. Fraser*

---

[2]  The relevant portion of 39-A M.R.S. § 212(3) reads:

> **3. Specific loss benefits.**  In cases included in the following schedule, the incapacity is considered to continue for the period specified, and the compensation due is calculated based on the date of injury subject to the maximum benefit set in section 211. Compensation under this subsection is available only for the actual loss of the following:
>
> . . . .

4

*Paper, Ltd.*, 1997 ME 225, ¶ 7, 703 A.2d 1256 (holding that the statute's "actual loss" language means nothing less than amputation). The statute's specific loss schedule states that benefits will be paid for a certain number of weeks, depending on the injury. *See* 39-A M.R.S. § 212(3). Specific loss benefits may not be coordinated with non-workers' compensation benefits, such as Social Security or employer-sponsored disability insurance or pension programs. 39-A M.R.S. § 221(1) (2012). "It is the intent of the Legislature that, because [specific loss benefits] recognize human factors substantially in addition to the wage loss concept, coordination of benefits should not apply to such benefits." *Id.* If, however, an employee remains entitled to benefits after the expiration of the specific loss period, those benefits are subject to coordination. *See Mitton v. Verizon*, 2012 ME 41, ¶ 15, 38 A.3d 1285 (applying this rule in a case involving the conclusive presumption of permanent and total incapacity, the benefits of which receive the same coordination treatment as specific loss benefits).

[¶7]  We have concluded that specific loss benefits may be coordinated with other workers' compensation benefits. *See Boehm v. Am. Falcon Corp.*, 1999 ME

---

   **B.**  First finger, 38 weeks;

   . . . .

Specific loss benefits are also awarded when an employee loses at least eighty percent of vision in one eye, *id.* § 212(3)(M), after treatment "has reached a reasonable medical endpoint," *Tracy v. Hershey Creamery Co.*, 1998 ME 247, ¶ 9, 720 A.2d 579.

16, ¶ 11, 726 A.2d 692. In *Boehm*, the employee suffered a work-related injury resulting in the immediate loss of a finger. *Id.* ¶ 2. The employer paid total incapacity benefits for eight months and partial incapacity benefits for nine months while the employee recovered from her injury. *Id.* The Board subsequently awarded the employee specific loss benefits for the loss of her finger, in addition to the benefits received from her incapacity. *Id.* ¶ 3. On appeal, we held that the employee was entitled to specific loss benefits but that the employer was entitled to offset those benefits by the amount of the incapacity benefits it had already paid. *Id.* ¶ 11.

[¶8] In reasoning that specific loss benefits were subject to coordination with other workers' compensation benefits, we recounted the history of specific loss benefits in Maine. *Id.* ¶¶ 5-9. Specific loss benefits, sometimes known as "schedule benefits," have existed in Maine since the original enactment of the workers' compensation law in 1915. *Id.* ¶ 5. Specific loss benefits were a form of permanent impairment benefit. *Id.* ¶ 6. Before 1965, employees were not entitled to receive concurrent specific loss benefits and incapacity benefits because both were intended to compensate employees for lost earning capacity. *Id.* ¶ 5. In 1965, the Legislature amended the Act to provide that employees could be entitled to both a specific loss benefit and an incapacity benefit for the same injury. *Id.* ¶ 6.

[¶9] Subsequent changes to the workers' compensation system led us to conclude that title 39-A does not permit concurrent payment of incapacity benefits and specific loss benefits when the injury and the amputation occur simultaneously. *Id.* ¶ 11. In 1991, the Legislature amended title 39 to prohibit the concurrent award of permanent impairment benefits, including specific loss benefits, and incapacity benefits. *Id.* ¶ 7. Then, title 39-A abolished permanent impairment benefits entirely, and we concluded that the Legislature intended "to create a presumptive *incapacity* benefit for the loss of, or injury to, specific body parts."[3] *Id.* ¶ 9.

[¶10] In *Boehm*, we rejected the employee's reliance on the "human factors" language of 39-A M.R.S. § 221(1) as proof that specific loss benefits should not be coordinated with other workers' compensation benefits. 1999 ME 16, ¶¶ 10-11, 726 A.2d 692. We acknowledged that a seriously injured employee's incapacity benefits could offset his or her entire specific loss benefit. *Id.* ¶ 11. Nevertheless, we reasoned that the "human factors" language is intended to provide a minimum number of weeks of benefits, which cannot be coordinated with non-workers' compensation benefits. *Id.*; *see also Mitton*, 2012 ME 41, ¶ 10, 38 A.3d 1285. As a result, the statute "provides a real benefit to many injured

---

[3] Public Law 1991, ch. 885, §§ A-7, A-8, repealed title 39 and replaced it with title 39-A.

employees" even if it does not permit "a double recovery." *Boehm*, 1999 ME 16, ¶ 11, 726 A.2d 692.

[¶11] In this case, the hearing officer reasoned that pursuant to our decision in *Boehm*, Scott's specific loss benefits were subject to offset. As Scott argues, however, *Boehm* is distinguishable because pursuant to *Gibbs*, Scott's entitlement to specific loss benefits did not arise until his finger was actually amputated. *See Gibbs*, 1997 ME 225, ¶ 7, 703 A.2d 1256. In *Boehm*, the employee's injury and amputation were concurrent. *See* 1999 ME 16, ¶ 2, 726 A.2d 692. Here, several months passed between Scott's injury and the amputation of his finger. Therefore, during the period immediately following the injury when Scott was receiving incapacity benefits, he was not eligible for specific loss benefits.[4]

[¶12] Reading *Boehm* to apply only when an employee is entitled to incapacity benefits and specific loss benefits at the same time is consistent with the distinct treatment of injuries listed in the specific loss schedule. In addition to exempting specific loss benefits from coordination with non-workers' compensation benefits, the statute provides another clue that the Legislature intended for specific loss benefits to be distinct from incapacity benefits. When an employee is receiving specific loss benefits for one triggering injury and sustains

---

[4] Scott does not dispute that Fraser is entitled to offset against his specific loss benefits the incapacity benefits it paid *after* the amputation.

8

another triggering injury, payments for the second loss begin after the conclusion of payments for the first loss. 39-A M.R.S. § 212 (2011).[5] That is, specific loss benefits cannot offset other specific loss benefits.

[¶13] We conclude that Fraser is not entitled to offset the incapacity benefits paid during the months after Scott's initial injury but before the amputation of his finger. This outcome recognizes that Scott was not entitled to receive specific loss benefits during that period, *see Gibbs*, 1997 ME 225, ¶ 7, 703 A.2d 1256, and recognizes the "human factors" associated with the loss of Scott's finger, *see* 39-A M.R.S. § 221(1). Further, this outcome acknowledges that Scott had two periods of incapacity, one between May and December of 2003 when he was injured but before his finger was amputated, and the additional week of incapacity after the amputation in 2004. Given this construction of the statute, the Board erred in permitting an offset for the incapacity benefits paid before the amputation and we vacate its decision.

---

[5] The relevant section of 39-A M.R.S. § 212 (2011) reads:

> In case of the loss of one member while compensation is being paid for the loss of another member, compensation must be paid for the loss of the 2nd member for the period provided in this section. Payments for the loss of the 2nd member begin at the conclusion of the payments for the first member.

The 2012 version of the Maine Revised Statutes does not contain this paragraph. *See* 39-A M.R.S. § 212 (2012). It appears to have been inadvertently deleted and is included in the online version provided by the Office of the Revisor of Statutes. *See* http://www.mainelegislature.org/legis/statutes/39-A/title39-Asec212.pdf (last visited Mar. 18, 2013).

The entry is:

> Decision of the Workers' Compensation Board vacated. Remanded for entry of an award of specific loss benefits not subject to an offset for the incapacity benefits paid before the amputation of Scott's finger.

---

**On the briefs:**

Norman G. Trask, Esq., Currier & Trask, P.A., Presque Isle, for appellant David L. Scott

Timothy A. Pease, Esq., and Tracy J. Roberts, Esq., Rudman Winchell, Bangor, for appellees Fraser Paper, Inc., and Sedgwick Claims Management

**At oral argument:**

Norman G. Trask, Esq., for appellant David L. Scott

Timothy A. Pease, Esq., or appellees Fraser Paper, Inc., and Sedgwick Claims Management

Workers' Compensation Board file number 03-00-59-77
FOR CLERK REFERENCE ONLY